UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL SALUD,

    Plaintiff,

v.   Case No. 8:21-cv-2709-SCB-CPT

EXPRESS, LLC,

    Defendant.
_____/

### **O R D E R**

THIS CAUSE comes before the Court on Defendant Express, LLC's ' Motion to Compel Individual Arbitration and to Stay Litigation and memorandum of law. (Doc. 17). Plaintiff, Daniel Salud, filed a Response in Opposition. (Doc. 25). Defendant filed a Reply. (Doc. 28). The Motion is due to be granted for the reasons that follow.

### I. BACKGROUND

Plaintiff, Daniel Salud, brings a Class Action Complaint against Defendant, Express, LLC, a clothing retailer, for violations of various provisions of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.*, the Florida Telephone Solicitation Act, Fla. Stat. § 501.059, the Federal Communication Commission regulations promulgated thereunder, 47 C.F.R. §64.1200, as well as

the Florida Consumer Protection Act, Fla. Stat. § 501, *et seq.*. (Doc. 1). Plaintiff claims that Defendants committed these violations by sending him harassing telemarketing text messages.

In the instant Motion, Defendant asserts that Plaintiff is barred from prosecuting his action in this Court, and from seeking relief on behalf of the defined classes, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). (Doc. 17). Defendant relies on an arbitration provision "incorporated by reference" within "terms and conditions" it sent in a promotional text message to Plaintiff. (*Id.*). In opposing compulsory arbitration, Plaintiff argues that: (1) he did not receive any such text message from Defendant; (2) Defendant cannot enforce the arbitration provision because Defendant's promise to send "promotional text messages" in exchange for a promise to arbitrate is "entirely gratuitous" and "illusory"; (3) Defendant fails to lawfully "incorporate by reference" the terms containing the arbitration provision; and (4) Plaintiff's claims fall outside the scope of the arbitration provision. (Doc. 25).[1]

---

[1] The Court observes that this is Plaintiff's counsel's second attempt to avoid Defendant's arbitration provision. In their first attempt, they filed a nearly identical complaint on behalf of Plaintiff Angela Park ("Park") for claims arising out of the alleged receipt of text messages. *Park v. Express, LLC*, No. 21- 0452 (M.D. Fla.) ("*Park*"). In that case, Park sought to avoid arbitration on the grounds that: (1) Defendant's "Texting Terms and Express Terms" are "illusory" and "unenforceable"; (2) the "Texting Terms" do not incorporate by reference the "Express Terms"; and (3) the claims fall outside the scope of the Arbitration Agreement. *Park*, Doc. 25 at 5–19. On August 10, 2021, the Honorable Steven D. Merryday rejected each of these arguments and

## II. DISCUSSION

The FAA codifies a federal policy favoring arbitration, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991), and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). If a valid and written agreement requires arbitration of a claim, the FAA obligates a court to direct the parties to arbitrate. State law governs the validity and scope of the parties' agreement, including whether the parties agree to arbitrate. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) ("The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract'") (citation omitted)). Neither party to this action disputes that Florida law governs whether the parties agreed to arbitrate Plaintiff's claims.[2] (Doc. 25 at 3; Doc. 17 at 11).

Under Florida law, an enforceable contract, including one imposing

---

directed Park to pursue her claims in individual arbitration. *See Park*, Doc. 29 at 5. In making the same arguments (and citing the same case law) in the instant case, Plaintiff does not acknowledge Judge Merryday's decision. (*See* Doc. 25 at 7–20).

[2]   Although Defendant suggests that a choice of law provision (Doc. 17 at 11 n.8) in the terms applies Ohio law to this action, it acknowledges that no conflict exists between Florida and Ohio law governing contract formation. *Bell v. Royal Seas Cruises, Inc.*, 2020 WL 5639947, at *4 (S.D. Fla. 2020) (Ruiz, J.) (discerning no conflict between Ohio and Florida law governing "the basic elements of contact formation.").

3

arbitration, requires an offer, an acceptance, and consideration. *Med-Star Cntr., Inc. v. Psychiatric Hosp. of Hernando Cty., Inc.*, 639 So.2d 636, 637 (Fla. Dist. Ct. App. 1994). The party moving to compel arbitration must prove the existence of a valid and enforceable arbitration provision. *Knowles v. C.I.T. Corp.*, 346 So.3d 1042, 1042 (Fla. Dist. Ct. App. 1977). Here, Defendant shows through a declaration based on its business records that an individual using Plaintiff's cell phone number received a text message with terms incorporating by reference an arbitration provision (Doc. 17 at 3–4), that a text message assenting to those terms was sent in response from an individual using Plaintiff's cell phone number (*id.* at 4; Doc. 17-1, ¶ 3), and that in exchange Plaintiff's cell phone number received, among other things, notice of discounted clothing. Defendant demonstrates that individuals can only sign up to receive Defendant's text messages by first affirmatively texting a keyword to the designated short code 397-737 and then affirmatively replying "Y" in response to the message that contains the hyperlinked texting terms. (Doc. 17-1, ¶ 4). Defendant's business records are sufficient to establish manifestation of Plaintiff's assent to the arbitration provision. *See Carusone v. Nintendo of Am., Inc.*, No. 19-01183, 2020 WL 3545468, at *3 (N.D. Ala. June 30, 2020); *Laine v. JetSmarter, Inc.*, No. 18-62969, 2019 WL 1900339, at *2–3 (S.D. Fla. Apr. 29, 2019).

Furthermore, and alternatively, Plaintiff is the named member in a "loyalty program" that offers discounts if he assents to Defendant's terms, including the arbitration provision. (Doc. 17 at 4–6; 13; Doc. 17-1 at 4–5; Doc. 17-1 at 13 ("By enrolling in the program . . . you expressly agree to these terms.")). Because Defendant conspicuously notified Plaintiff of these terms containing the arbitration provision and because Plaintiff affirmatively assented to those terms and continues to assent by participating in the loyalty program (*see* Doc. 17 at 4–5; Doc. 17-1, ¶¶ 8–12), Defendant has proven the existence of an arbitration agreement it has with Plaintiff. *Triton Stone Holdings, L.L.C. v. Magna Bus., L.L.C.*, 308 So. 3d 1002, 1006 (Fla. Dist. Ct. App. 2020) ("A party who accepts the proceeds and benefits of a contact remains subject to the burdens the contract places upon him."); *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025 (Fla. Dist. Ct. App. 2018) (compelling arbitration because a text message with a hyperlink terms puts the plaintiff "on notice that [he] . . . was subject to arbitration").

In an effort to create a genuine issue of fact as to whether he actually opted to receive text messages from Defendant, Plaintiff submits an affidavit suggesting that he did not *personally*: (1) receive or send text messages about the text program and (2) use the "rewards program." (Doc. 25-1, ¶¶ 2–4). However, Defendant concedes that his wife has "used the rewards program" membership that is in his

5

name. (*Id.* ¶ 5). Notably, Plaintiff neither avers nor suggests that his wife (or anyone else) did not use his cell phone number to opt in to receive text messages from Defendant. (*See* Doc. 25-1). He also does not dispute that he alternatively manifested his assent to the arbitration provision through his personal membership in Defendant's loyalty program and by repeatedly accepting (whether directly or through his wife) the benefits of that program. (*See id.*). Perhaps most importantly, Plaintiff does not provide any phone records or text message history for his cell phone number to refute Defendant's business records. Therefore, he fails to create any genuine issue of fact that he opted-in to receive text messages and assented to Defendant's terms at that time. *See Plazas Rocha v. Telemundo Network Grp. LLC*, No. 20-23020, 2020 WL 6679190, at *4 (S.D. Fla. Nov. 12, 2020) (rejecting a plaintiff's self-serving declaration when the defendant's "record evidence supports a finding that the parties formed a valid arbitration agreement").

Plaintiff contends that the arbitration provision is nevertheless a legally unenforceable "illusory" agreement because he cannot "possess[ ] any legal rights to enforce [Defendant's] offer to send messages" in exchange for the promise to arbitrate. (Doc 25 at 7–8). He maintains that Defendant's reservation of the right "to change [or] modify" the agreement supports his argument that the arbitration agreement is "unenforceable." (Doc. 25 at 9–11). However, Plaintiff offers no

6

persuasive authority suggesting that he could not enforce the agreement if he suffered an (unlikely) injury. To the contrary, an enforceable arbitration agreement exists if a plaintiff is presented with the opportunity to review the agreement and then accepts the benefits from the agreement *Plazas Rocha,* 2020 WL 6679190, at *4 . Additionally, reserving the right to modify an arbitration agreement does not render the agreement unenforceable, rather, it preserves the validity of the arbitration agreement. *Feldkamp v. Long Bay Partners, LLC*, 773 F. Supp. 2d 1273, 1284 (M.D. Fla. 2011) (Steele, J.).

     Plaintiff also argues that Defendant cannot lawfully "incorporate" the arbitration provision by mere reference in its text message. This argument fails, however, given that the text message sent to Plaintiff's cell phone number included a prominent hyperlink to the terms containing the arbitration provision. *Greenberg v. Drs. Assocs., Inc*., 338 F. Supp. 3d 1280 (S.D. Fla. 2018) (Ungaro, J.) (enforcing an arbitration agreement incorporated by a hyperlink). The text message, by mentioning "consent" and notifying Plaintiff that he "agree[s]" to the hyperlink terms, which contain the arbitration provision, provides "general language" revealing "an intent to be bound by the terms of [a] collateral document." *Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc*., 743 So.2d 627, 631 (Fla. Dist. Ct. App. 999). Plaintiff, therefore, "had reasonable notice" of the arbitration

agreement. *Temple v. Best Rate Holdings, LLC*, 360 F. Supp. 3d 1289, 1304 (M.D. Fla. 2018) (Honeywell, J.).

Alternatively, even if Defendant's text message notifications fail to bind Plaintiff to arbitration, his continuing membership in Defendant's loyalty program constitutes his assent to arbitrate. (Doc. 17 at 4–6, 13; Doc. 17-1 at 4–5, 13). Defendant demonstrates that ipagt advised Plaintiff via email that the loyalty program "provided by Express and its terms may change." (Doc. 17-1 at 4, 32). The same e-mail provides conspicuous notice of a hyperlink to terms that warn "accessing, browsing, or otherwise using the services indicates your agreement to these terms including the arbitration provision," which appears in subsequent pages. (Doc. 17-1 at 4, 32, 35, 40). Because the arbitration provision "is intended to apply as broadly as possible" and governs "any dispute, claim, or controversy arising from or relating to" Defendant's "services or terms," including its text message and loyalty programs (Doc. 17-1 at 12, 18, 40), Plaintiff must arbitrate the claims in his Complaint. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

1. Defendant Express, LLC's Motion to Compel Individual Arbitration and to Stay Litigation (Doc. 17) is **GRANTED**.

2. This matter is hereby **STAYED** pending arbitration;

3. The Clerk is instructed to **ADMINISTRATIVELY CLOSE** this case;

4. On September 2, 2022, and every two months thereafter, Plaintiff is directed to file a status report with the Court detailing the status of this case and the arbitration proceedings; and

5. Within seven days after the final arbitration decision is issued, Plaintiff is directed to inform the Court whether this case needs to be reopened or whether it can be dismissed with prejudice.

6. Any party may move to return this case to active status at any time.

**DONE AND ORDERED** at Tampa, Florida, this 2nd day of March, 2022.

_____
SUSAN C. BUCKLEW
United States District Judge